### PEOPLE v. DRUM.

(Supreme Court, Appellate Division, Second Department.   June 5, 1908.)

DISORDERLY HOUSE—SUFFICIENCY OF EVIDENCE.

    Testimony of a policeman that he came to a hotel with a woman in the evening registered with her as W. and wife in the presence of defendant, who was employed to assist in the management of the hotel, and that they were assigned and conducted by him to a bedroom, and that after staying in the room about 30 minutes witness and the woman, who was not veiled, left, and of another policeman that on the same evening he registered with the same woman as P. and wife in the presence of defendant who assigned and conducted them to a room, and that the woman was veiled and went upstairs in advance of witness and was not present when he registered was insufficient to prove that the hotel was a disorderly house or house of assignation; there being no evidence that it was a disorderly place, or frequented by disorderly or vicious people, or of any unlawful doings in it, or that defendant knew that the same woman accompanied each of the witnesses.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Disorderly House, §§ 26–29.]

    Hooker and Miller, JJ., dissenting.

Appeal from Court of Special Sessions, Kings County.

Thomas Drum was convicted of keeping a disorderly house, and appeals. Reversed.

    The defendant was found guilty under an information filed against him by the district attorney of Kings county for violation of section 322 of the Penal Code in three counts; the first charging him with keeping "a house of ill fame and assignation," the second with keeping a disorderly house, and the third with keeping a house of public resort to which he invited and procured men and women to resort night and day, and there to remain "drinking, tippling, gambling, rioting, disturbing the peace, whoring and misbehaving themselves."

Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

John J. McGinnis, for appellant.
Peter P. Smith, for the People.

GAYNOR, J.   The defendant is employed to assist in the management of a hotel in the borough of Brooklyn which is licensed under Liquor Tax Law, Laws 1896, p. 45, c. 112. The restaurant and dining room will seat 200 people at table, and there are 18 bedrooms upstairs. The evidence against the defendant is by two policemen. The first testifies that he came to the hotel in citizen's clothes with a woman at about 7:30 p. m., registered with her at the desk as John

Wise and wife in the presence of the defendant who was in charge, and that they were assigned by him to bedroom 6, to which he conducted them, and that after staying in the room about 30 minutes he and the woman went out of the hotel. He says the woman was not veiled. The second policeman testifies that some time before 9 p. m. the same day he registered with the same woman as William Porter and wife, in the presence of the defendant, who assigned and conducted them to room 15. He says the woman was veiled, and also that she went upstairs in advance of him and was not present when he registered. The first policeman says that he saw the second go into the hotel with the woman 15 or 20 minutes after he came out. They and the woman were acting in concert by direction of their captain.

The evidence was insufficient to prove that the hotel was a disorderly house, or house of assignation. There was no evidence that it was a disorderly place, or frequented by disorderly or vicious people, or of any unlawful doings in it. The only evidence on the subject, which was given by the defendant, was to the contrary.

It is an indictable offense at common law for the keeper of an inn or hotel to refuse to receive any guest and entertain him with meals or lodging or both, and our Penal Code (section 381) makes it a misdemeanor to do so, "without just cause or excuse." Evidence that would suffice to show that a private house was a house of assignation might entirely fail to prove that of a licensed inn or hotel, which is the case with the evidence here. The keeper of an inn or hotel is bound to receive and accommodate those presenting themselves as guests at his peril. He can refuse them only for just cause or excuse. There was no evidence from which it could be found that the defendant knew that the same woman accompanied each of the policemen. The conviction seems to have been had on the general notion of the police that it suffices that men and women received as man and wife at a hotel are not such in order to convict the proprietor, regardless of whether he knew it. If that were so, the proprietors of our large hotels could be convicted of keeping houses of assignation every day. But it is not. What was done by the police against this hotel could probably be repeated in the case of most if not all of our hotels, fashionable or plain, high or low.

It is true that the first policeman testified in this case that he asked the defendant what name he would write in the register, and that the defendant responded "put down John Wise, nobody will be the wiser," and that he then took him and his woman to their bedroom and told them "to have a good time" as he was leaving them; but this is so inherently improbable that we entertain no notion that it was credited by the trial court.

The judgment should be reversed.

Judgment of the court of Special Sessions reversed, and new trial ordered.

JENKS and RICH, JJ., concur. HOOKER and MILLER, JJ., dissent.